IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROGER E. FLUD, *as attorney in fact for his father,* LAWRENCE E. FLUD, *an incapacitated person*,

    Plaintiff,

v().

UNITED STATES OF AMERICA, *Muskogee Regional Office, ex rel.*, DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

Case No. 10-CV-725-GKF-TLW

## OPINION AND ORDER

Lawrence E. Flud is a veteran who claims the U.S. Department of Veterans Affairs failed to diagnose a cervical stenosis and compressed spinal cord and failed to recommend and perform surgery to remedy the condition. Arguing that the action is untimely, the government invokes Federal Rule of Civil Procedure 12(b)(1) and moves for dismissal based upon the absence of subject matter jurisdiction.

### I.    The 12(b)(1) Motion

In its motion, the government challenges the factual basis upon which subject matter jurisdiction rests by going beyond the allegations contained in the Complaint and challenging the facts upon which subject matter jurisdiction depends. Where a court allows affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1), the court's reference to evidence outside the pleadings does not convert the motion to one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). However, a court must treat the motion as

one for summary judgment "when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* Conversion is unnecessary where the FTCA statute of limitations does not create a jurisdictional question intertwined with the merits. *See Trobaugh v. United States*, 35 Fed. Appx. 812, 814-15 (10th Cir. May 23, 2002) (unpublished op.) (holding that the district court had properly treated a motion to dismiss, based on timeliness of an FTCA claim, as one to dismiss under Rule 12(b)(1) because the determination of whether the claim was time-barred bore no relationship to whether the plaintiff could make out a showing of negligence on the merits of the case). Here, as in *Trobaugh*, a determination of whether the claim is time-barred bears no relationship to whether the plaintiff can make a showing of medical negligence. Therefore, the court need not treat the motion as one for summary judgment.

## II. Allegations and Evidence Relevant to Timeliness of the Claim

In September of 2006, Lawrence E. Flud ("Mr. Flud") presented to the Department of Veterans Affairs ("VA") medical facility located in Muskogee, Oklahoma. [Complaint, Dkt. # 2, ¶¶ 2, 3, 9]. The VA's doctors allegedly failed to diagnose Mr. Flud with cervical stenosis and a compressed spinal cord injury. They further failed to identify the need for immediate surgical repair. [*Id.*, ¶ 9]. The severity of Mr. Flud's condition and the need for surgery remained undiagnosed until February 4, 2008, when Mr. Flud was diagnosed by doctors other than those provided by the VA. [*Id.*, ¶ 10].

In response to the government's Interrogatory No. 8, which asked plaintiff to "[e]xplain completely the events, discussions or information that [Mr. Flud] received on February 4, 2008," plaintiff responded as follows:

> George Carstens, M.D. wrote a radiology report on January 29, 2008 diagnosing [Mr. Flud] with severe degenerative spondylosis with severe stenosis at C3-4, C4-5 and C5-6. Frank Tomecek, M.D. said he suspected a fall [Mr. Flud] suffered in September 2006 caused a cord compression and exacerbated a pre-existing

condition. Further, he said that [Mr. Flud's] symptoms of and including, an inability to walk, are related to cervical spondylosis and stenosis.

[Dkt. # 46-1, p. 13]. Dr. Tomecek examined and consulted with Mr. Flud on February 4, 2008. [Dkt. # 46-3, pp. 1-4]. Immediately after the consultation, Dr. Tomecek wrote:

(1) "Definitely, his current symptoms are related to his cervical spondylosis and stenosis. Many of the spondylotic changes in his neck are chronic. I suspect that the fall that he suffered in September of 2006 caused a cord contusion and exacerbation of pre-existing conditions." [*Id.*, pp. 2-3].

(2) "This ongoing degeneration caused a certain amount of stenosis in his neck that was made much worse by the fall and actually probably resulted ultimately in a cord contusion that has led him to be in his current state." [*Id.*, p. 3].

(3) "He already has quadriparesis and probable central cord syndrome from his last fall. I explained all these to him. I explained the surgery and also explained the potential risks and complications of surgery. . . . He is aware of all these things and is going to think about how to proceed." [*Id.*, pp. 3-4].

By letter dated February 20, 2008, Roger Flud contacted the VA's Muskogee medical facility on behalf of his father "to request reimbursement of money I have spent outside of the VA Medical Network." [Dkt. # 46-2, p. 1]. He stated, "[i]n short I believe the VA should reimburse my expenses because I had to go outside of the network to get my neck examined," and "I have attached doctor's reports, consults and receipts for all expenses outside of the VA network. Below I have itemized the expenses I am requesting to be reimbursed." [*Id.*, pp. 1, 2]. Plaintiff specifically requested reimbursement for the following expenses: (1) Dr. Hastings' office visit: $325; (2) Dr. Tomecek's office visit: $320; (3) MRI at Tulsa Spine and Specialty Hospital: $600; (4) Dr. Powers' radiology charge to read the MRI: $200; and (5) Regional Medical Lab for blood work ordered by Dr. Hastings: $168.55. These five expenses totaled $1,613.55. [*Id.*]. The government contends the requested reimbursement was "promptly" paid, but offers no evidence as to when that occurred. Plaintiff concedes the VA reimbursed his requested expenses, but does not specify when he received the reimbursement. [Dkt. # 56, p. 4 n.2].

By way of an affidavit appended to his response brief, Roger Flud states: "I wrote and mailed the [February 20, 2008] letter. . . . and addressed it (to the attention of "Dee M.") because I was instructed to do that by Dr. Thomas D. Schneider at the VA in Muskogee." [Dkt. # 56-1, ¶¶ 1-2]. "I did not consult a lawyer before February 20, 2008 about the matters addressed in my letter of that date. I relied upon the people at the VA with regard to the procedure for making a claim against the VA on behalf of my father." [*Id.*, ¶ 3]. "My father and I assumed that, eventually, the VA would take some action regarding the situation we presented to it. I believed that there would come a time when the people in charge at the VA would discuss with us not only reimbursement of the costs of getting a correct diagnosis, but also the costs of the surgery that my father obviously needed and compensation for the uncorrectable losses of function that my father had as a result of the VA's 2006 misdiagnosis." [*Id.*, ¶ 4]. "By the first of February, 2010, I had become concerned about whether the VA was ever going to act on our claim. I went to see Mr. Stidham on or about February 15, 2010 and explained everything that had happened up until then. I authorized Mr. Stidham to file the claim form with the VA that I understand was filed on February 16, 2010." [*Id.*, ¶ 5]. "If the VA had just denied our claim earlier or given us some information to the effect that it was going to take no action and pay no compensation of any kind, I would have taken [ ] action[ ] [. . .] promptly upon learning that information." [*Id.*, ¶ 6].

On February 16, 2010, Roger Flud filed a "Standard Form 95" administrative "Claim for Damage, Injury or Death" with the VA on behalf of his father. [Dkt. # 46-4, pp. 1-4]. He alleged Mr. Flud was injured in 2006, when the VA's doctors negligently failed to diagnose and treat Mr. Flud's cervical stenosis. [*Id.*, p. 3]. He claimed $5,000,000 for personal injury. [*Id.*, p. 4]. On August 3, 2010, the VA denied the administrative claim. [Dkt. # 2, ¶ 5]. Roger Flud

filed the Complaint as attorney-in-fact on behalf of his incapacitated father on November 16, 2010. [Dkt. # 2].

### III. Discussion

The United States, as a sovereign, is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act ("FTCA") constitutes a limited waiver of the United States' sovereign immunity; however "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). A district court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in § 2401(b). *In re Franklin Savings Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004). A medical malpractice claim pursuant to the FTCA does not begin to run until "the plaintiff has discovered both his injury and its cause." *United States v. Kubrick*, 444 U.S. 111, 120 (1979). In a misdiagnosis case, the relevant injury for accrual is the injury caused by the misdiagnosis and lack of treatment, not the pre-existing injury that brought the patient to the doctor's door. *Harvey v. United States*, 685 F.3d 939, 949 (10th Cir. 2012).

The government asserts that Mr. Flud clearly knew of the VA's misdiagnosis and its failure to recommend and perform surgery by February 4, 2008, and that plaintiff's misdiagnosis claim accrued no later. Plaintiff does not contest that assertion. [Dkt. # 56-2, p 3, n.1]. The government argues the plaintiff's tort claim is barred because it was filed more than two years later. In response, plaintiff contends his claim is not barred by limitations because 1) his letter of February 20, 2008 constituted a tort claim under 28 U.S.C. §2401(b) and applicable regulations, a claim he later amended with his February 16, 2010 Standard Form 95 submission; and 2) the

5

government is equitably estopped from invoking the two-year limitations period, and the limitations period should be equitably tolled.

For several reasons, the court is unpersuaded by plaintiff's argument that the statutory time limitation was satisfied by plaintiff's letter of February 20, 2008. First, the personal injury tort claim asserted in the present suit was not mentioned in the letter. The letter merely requested reimbursement of expenses. It began with the statement "I am writing this letter to request reimbursement of money I have spent outside of the VA Medical Network," and ended with an itemization of the $1,613.55 in expenses he wished to have reimbursed. Plaintiff noted he was writing the letter "to have expenses previously spent reimbursed," and summarized the purpose of the letter by stating "[i]n short I believe the VA should reimburse my expenses because I had to go outside of the network to get my neck examined." *See Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 720-21 (2nd Cir. 1998) (affirming dismissal for lack of subject matter jurisdiction where document requesting reimbursement for expenses incurred did not satisfy the claim requirement of the FTCA).

Second, the letter of February 20, 2008 failed to meet the FTCA's requirements for a personal injury claim because it did not mention any specific amount of damages for personal injury. The FTCA's jurisdictional statute, 28 U.S.C. § 2675(a), requires that claims for damages against the government contain a sum certain damages claim. *Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). Though the letter contained a sum certain claim for reimbursement, it did not contain a sum certain tort damages claim. *See Wanjala v. United States*, 2011 WL 4498826 (D.Or. July 22, 2011) (sum certain damage claim for reimbursement, with no mention of amount of damages requested for personal injury, is insufficient to satisfy the administrative filing obligation under the FTCA); *Burton v. United States*, 2013 WL 3093887

6

(D. Colo. June 18, 2013) (no subject matter jurisdiction where plaintiff did not file an administrative claim meeting the "sum certain" requirement).

Third, the VA paid the reimbursement claim. Once the VA satisfied the sole request contained in the plaintiff's letter, there was nothing more for it to do. Though the letter describes the injuries plaintiff contends were misdiagnosed, it merely requests reimbursement. Nothing in the letter suggests that the VA should have initiated an investigation into a personal injury tort claim following receipt of the letter. *Cizek v. United States*, 953 F.2d 1232, 1234 (10th Cir. 1992) (rejecting plaintiff's argument that government could evaluate her claim for personal injuries based upon her insurer's claim for reimbursement).

Fourth, the plaintiff's tort claim of February 16, 2010 does not relate back to the original reimbursement claim of February 20, 2008, because the original claim did not put the VA on notice of the fact or amount of the tort claim. *Lee v. United States*, 980 F.2d 1337, 1339 (10th Cir. 1992). An amendment adding new claims outside the limitations provision crafted by Congress would defeat the obvious purpose of the limitations period, "which is to encourage the prompt presentation of claims." *Id,* (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

Plaintiff also argues that the government is equitably estopped from invoking the two-year limitations period, and that the two-year limitations period should be equitably tolled.

Equitable estoppel "prevent[s] a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage." *Spaulding v. United Transp. Union*, 279 F.3d 901, 909 (10th Cir. 2002) (quoting *Penny v. Giuffrida*, 897 F.2d 1543, 1545 (10th Cir. 1990)). In *Lurch v. United States*, 719 F.2d 333 (10th Cir. 1983), the Tenth

Circuit detailed the elements necessary to obtain equitable estoppel against the federal government:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Id.* at 341. And mere reliance is not enough—such reliance on an adversary's misrepresentations "must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Spaulding*, 279 F.3d at 909 (quoting *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984)). In this case, plaintiff argues the government is equitably estopped because the Muskogee VA instructed Roger Flud to submit Mr. Flud's claim in a particular manner, to a particular address and to the attention of a specific recipient. He contends that "[t]he VA's representations about claims procedure caused plaintiff to refrain from consulting a lawyer altogether."[1] [Dkt. #56, p. 12, n.10]. Significantly, plaintiff does not state he requested instruction on filing a tort claim for misdiagnosis, as opposed to the reimbursement letter he actually submitted. Even if it were assumed that the VA's remarks amounted to misrepresentation and that VA officials had reason to believe plaintiff would rely on the statement to delay filing his misdiagnosis claim, this court finds that plaintiff has failed to demonstrate that such reliance was *reasonable*. It was patently unreasonable for plaintiff to believe that his request for reimbursement of $1,613.55 in medical expenses in any way constituted a medical misdiagnosis tort claim for as much as $5 million in damages.

Equitable tolling is not available under the FTCA in this circuit. *Anderberg v. United States*, 718 F.2d 976, 977 (10th Cir. 1983) ("The limitation period in 28 U.S.C. § 2401(b) is not to be extended for equitable considerations"); *Staples v. United States*, 2011 WL 1225738, at *3

8

(W.D. Okla. Mar. 7, 2011) (citing *Anderberg*); *but see Roy v. United States*, 2012 WL 1130163 (D. Colo. April 4, 2012) ("The Tenth Circuit does not appear to have conclusively decided the issue of whether the FTCA statute of limitations periods may be tolled," where trial court tolled an FTCA claim during the pendency of a first case which was dismissed). Even if equitable tolling is available in this circuit, plaintiff has not established a basis for such relief. Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The plaintiff has not met his burden as to the first element, as he presented only a claim for reimbursement during the two-year limitations period. Moreover, he failed to diligently pursue his right to make a tort claim, merely "assum[ing] that, eventually, the VA would take some action" regarding the situation presented to the VA in the claim for reimbursement. [Dkt. #56-1, ¶4]. As for the second element, the court finds plaintiff has not met his burden of establishing that some "extraordinary circumstance" stood in his way of submitting a tort claim for the alleged misdiagnosis. Though VA personnel instructed plaintiff to submit his original claim in a particular manner, nothing extraordinary prevented the plaintiff from consulting a lawyer about his misdiagnosis claim.

Having addressed the arguments of the parties, this court finds and concludes that plaintiff filed his administrative tort claim on February 16, 2010, which was beyond the limitations period mandated by Congress.

For the reasons set forth above, the government's motion to dismiss for lack of subject matter jurisdiction [Dkt. # 46] is granted.

IT IS SO ORDERED this 30th day of May, 2014

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT